UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALPINE CONSULTING PARTNERS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> KEVIN JACOKES, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-913 (SLS) <br><br> Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

Kevin Jacokes, a Virginia resident, was employed by Alpine Consulting Partners, LLC (Alpine) for over three years before his termination. According to Alpine, in his final days at the company, Mr. Jacokes created a competing consulting firm, Good Consulting, LLC (Good Consulting), to solicit Alpine's existing clients, and he misused his employee devices and credentials to access confidential Alpine models, customer lists, contracts, blueprints, data, and pricing information. Alpine sued Mr. Jacokes and Good Consulting, alleging breach of contract and tortious interference, as well as violations of the Federal Defend Trade Secrets Act and D.C. Uniform Trade Secrets Act. The Defendants now move to dismiss these claims for lack of personal and subject-matter jurisdiction. For the reasons that follow, the Court denies the motion.

## BACKGROUND

### A.   Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). The

Court considers materials outside the pleadings only when necessary to evaluate its jurisdiction. *See id.*

Alpine is a limited liability company with its principal place of business in the District of Columbia. Compl. ¶ 1, ECF No. 1. Mr. Jacokes is a Virginia resident who was employed by Alpine from June 2021 to September 2024. Compl. ¶¶ 12, 31. His employment agreement with Alpine included: (1) a confidentiality agreement, (2) a prohibition on soliciting Alpine's clients during his employment and for 24 months following his termination, and (3) a non-disparagement clause. Opp'n, Ex. 2 (EA), ECF No. 10, ¶¶ 3, 5.1, 5.4. In August 2024, Alpine grew concerned with Mr. Jacokes' job performance and conduct with respect to a client. Compl. ¶ 29. That same month, on August 13, 2024, Mr. Jacokes founded Good Consulting, a Virginia consulting company that competes with Alpine. Compl. ¶¶ 35–36; *id.* Ex. 1.

On September 3, 2024, Alpine informed Mr. Jacokes that his employment would be terminated on September 20, 2024. Compl. ¶¶ 30–31. In these final 17 days at Alpine, Mr. Jacokes solicited existing Alpine clients on behalf of Good Consulting, leading six clients to terminate their relationships with Alpine. Compl. ¶ 36. Before and after his termination, he also used his credentials to access confidential Alpine models, customer lists, contracts, blueprints, data, and pricing information to further Good Consulting's operations and solicitations. Compl. ¶¶ 37–42. Mr. Jacokes continues to misuse Alpine's confidential information including, but not limited to, information on Mr. Jacokes' Alpine-issued laptop that is still in his possession. Compl. ¶ 43.

### B. Procedural Background

Alpine sued Mr. Jacokes and Good Consulting for their solicitations and alleged misuse of proprietary information. Count I alleges that Mr. Jacokes breached his employment agreement with Alpine by failing to safeguard Alpine's confidential information, refusing to return Alpine's

2

confidential information after termination, and using Alpine's confidential information for improper purposes. Compl. ¶ 50. Counts II and III allege that Mr. Jacokes breached the non-solicitation and non-disparagement obligations under his employment agreement. Compl. ¶¶ 52–59, 60–65. Counts IV and V allege that Mr. Jacokes and Good Consulting violated the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836–39, and D.C. Uniform Trade Secrets Act, D.C. Code §§ 36-401–36-409. Compl. ¶¶ 66–97. And Count VI alleges tortious interference by Mr. Jacokes and Good Consulting causing the breach of contracts or business expectancies with Alpine's clients. Compl. ¶¶ 98–103.

Mr. Jacokes and Good Consulting move to dismiss this action for lack of personal jurisdiction and lack of subject-matter jurisdiction under Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure. Mot. Dismiss (Mot.), ECF No. 8. The motion is fully briefed and ripe for review. Opp'n, ECF No. 10; Reply, ECF No. 11.

## LEGAL STANDARD

"A motion under Rule 12(b)(1) presents a threshold challenge to a court's [subject-matter] jurisdiction." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022) (cleaned up). The plaintiff "bears the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction over her claims." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 69 (D.D.C. 2011). When evaluating a motion under Rule 12(b)(1), "the court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Sandoval v. U.S. Dep't of Justice*, 322 F. Supp. 3d 101, 104 (D.D.C. 2018).

When a party has moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). Although a court must resolve factual discrepancies in the plaintiff's favor, *id.*, the plaintiff "must

3

allege specific acts connecting [the] defendant with the forum" and "cannot rely on conclusory allegations" alone, *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012) (alteration in original) (quoting *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)). A court also "need not treat all of plaintiffs' allegations as true, and instead 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.'" *Id.* (quoting *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)).

Personal jurisdiction can be established in three ways. "First, 'specific jurisdiction' permits suits that 'arise out of or relate to' a [] defendant's activities in the forum State." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137 (2023) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). Second, a court may exercise "general jurisdiction" over any claim "when a defendant is 'essentially at home' in the State." *Ford Motor*, 592 U.S. at 358 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). Third, "express or implied consent" can serve as a "ground" for "personal jurisdiction" as well. *Mallory*, 600 U.S. at 138 (quotation omitted).

## DISCUSSION

The Defendants urge dismissal for lack of personal jurisdiction and lack of subject-matter jurisdiction. The Court is not persuaded. Because Mr. Jacokes' employment agreement with Alpine included a forum selection clause, he has consented to personal jurisdiction in this Court for Alpine's breach of contract claims. And the Court finds that it may exercise specific jurisdiction over both Mr. Jacokes and Good Consulting for their conduct challenged under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836–39, the D.C. Uniform Trade Secrets Act, D.C. Code §§ 36-401–36-409, and D.C. tort law. As for subject-matter jurisdiction, this Court has federal question

jurisdiction over the Federal Defend Trade Secrets Act claim, 28 U.S.C. § 1331, and can therefore exercise supplemental jurisdiction over the remaining claims, *id.* § 1367.

### A.      Breach of Contract Claims Against Mr. Jacokes (Counts I–III)

Mr. Jacokes appears to concede personal jurisdiction for Alpine's breach of contract claims in light of a forum selection clause in his employment agreement. Opp'n 7–8. Through that provision, Mr. Jacokes "consent[ed] to the exclusive jurisdiction of the State and Federal courts sitting in Washington, D.C. for the purpose of hearing and deciding any and all disputes, claims and controversies arising out of and relating to th[e] [employment] [a]greement." EA ¶ 6.1. And "a forum selection clause is generally considered to be a consent to the exercise of personal jurisdiction." *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 60 F. Supp. 3d 21, 32 (D.D.C. 2014). Because Alpine's breach of contract claims arise from Mr. Jacokes' employment agreement, the forum selection clause is dispositive. *See M3 USA Corp. v. Qamoum*, No. 20-cv-2903, 2021 WL 2324753, at *8 (D.D.C. June 7, 2021) ("[B]ecause personal jurisdiction is subject to waiver, [the minimum contacts] inquiry is unnecessary in cases in which the defendant has consented to personal jurisdiction by entering into a forum-selection clause[.]").

### B.      Statutory and Tort Claims against Mr. Jacokes (Counts IV–VI)

This Court also has jurisdiction over Alpine's claims against Mr. Jacokes arising under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836–39, the D.C. Uniform Trade Secrets Act, D.C. Code §§ 36-401–36-409, and D.C. tort law. Alpine makes two arguments in support of the Court's exercise of personal jurisdiction. It first argues that the forum selection clause vests the Court with personal jurisdiction over these claims because they arise from or relate to Mr. Jacokes' employment agreement. Opp'n 7–8. Second, it argues that the Court has specific jurisdiction over

Mr. Jacokes because he transacted business in the District. Opp'n 8–10. The Court agrees that it may exercise specific jurisdiction on these facts.

To establish specific personal jurisdiction, the Court "must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

### 1. Long-Arm Statute

This Court has jurisdiction under Section (a)(1) of D.C.'s long-arm statute, which permits the exercise of jurisdiction over a claim for relief arising from the defendant's "transacting [of] any business in the District of Columbia." D.C. Code § 13-423(a)(1). That provision covers "commercial or business-related activity," such as "performing contracts." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 111 (D.D.C. 2018). And the "transacting any business" provision in Section (a)(1) extends "jurisdiction to the full extent allowed by the Due Process Clause." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (citations omitted). Accordingly, the analysis under Section (a)(1) and the Due Process Clause "merge into a single inquiry." *Id.* at 44 (quoting *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013)).[1]

### 2. Due Process

Due process poses no barrier to the exercise of specific jurisdiction over Mr. Jacokes. To satisfy due process, "a plaintiff must show 'minimum contacts' between the defendant and the forum," ensuring that the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *GTE New Media Servs.*, 199 F.3d at

---

[1] Since Section (a)(1) of D.C.'s long-arm statute applies, the Court need not address Alpine's alternative argument that Section (a)(4) also encompasses Mr. Jacokes' conduct. *See Urquhart-Bradley*, 964 F.3d at 44 n. 3.

1347 (citations omitted). These contacts cannot be "random, isolated, or fortuitous" and "must show that the defendant deliberately reached out beyond its home" to "exploit[] a market in the forum State or enter[] a contractual relationship centered there." *Ford Motor*, 592 U.S. at 359 (cleaned up). Where a plaintiff "seeks to assert specific jurisdiction," due process requires not only that "the defendant has 'purposefully directed' his activities at residents of the forum" but also that the claim "'arise out of or relate to' those activities." *Mwani v. bin Laden*, 417 F.3d 1, 12 (D.C. Cir. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Here, Mr. Jacokes established minimum "contacts" with the District of Columbia by "entering a contractual [employment] relationship centered" in the District. *Ford Motor*, 592 U.S. at 359 (cleaned up). And this "ongoing contractual relationship" created a "deliberate affiliation with" the District alongside a "reasonable foreseeability of possible litigation here." *Aristotle Int'l, Inc. v. Acuant, Inc.*, No. 22-cv-741, 2023 WL 1469038, at *4 (D.D.C. Feb. 2, 2023) (cleaned up). Mr. Jacokes allegedly used his status as an Alpine employee to misappropriate trade secrets and interfere with Alpine's contractual relationships with existing clients. Compl. ¶¶ 66–97, 101. So, Alpine's "alleged injuries" from trade secrets misappropriation and contractual interference "ar[o]se out of or relate[d] to" Mr. Jacokes' employment relationship with Alpine. *Aristotle Int'l*, 2023 WL 1469038, at *5. Accordingly, this Court's exercise of specific jurisdiction over Mr. Jacokes' conduct does not run afoul of the due process guarantee. *See id.* at *2–*5 (court can exercise specific jurisdiction over Federal Defend Trade Secrets Act, D.C. Uniform Trade Secrets Act, and tortious interference claims that relate to a contractor's misuse of confidential information originally held by a D.C. Corporation).

### C. Statutory and Tort Claims Against Good Consulting (Counts IV–VI)

In addition to the claims against Mr. Jacokes, this Court also has specific jurisdiction over Alpine's claims against Good Consulting under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836–39, the D.C. Uniform Trade Secrets Act, D.C. Code §§ 36-401–36-409, and D.C. tort law. Alpine argues that the Court has jurisdiction over Good Consulting because of the "closely related" doctrine, under which non-parties may be bound by a forum selection clause if their conduct is closely related to the contractual relationship at issue. Opp'n 12–13. The Court is not convinced that this doctrine applies here. But it nonetheless finds that it has specific jurisdiction over Good Consulting. Courts may examine a corporate defendant's contacts for purposes of personal jurisdiction by looking to the acts "done by agents of [the] corporation." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 323 (1945). Here, Mr. Jacokes' acts done on behalf of Good Consulting are clearly sufficient to establish personal jurisdiction over the company. *See Calder v. Jones*, 465 U.S. 783 (1984).

#### 1. Long-Arm Statute

This Court may exercise jurisdiction over Good Consulting under Section (a)(1) and Section (a)(4) of D.C.'s long-arm statute. D.C. Code § 13-423. As discussed above, *supra* B.1, Section (a)(1) encompasses any entity that "transact[s] any business in the District of Columbia" and is "coextensive with the Due Process Clause of the Fifth Amendment." *Urquhart-Bradley*, 964 F.3d at 47 (first quoting D.C. Code § 13-423(a)(1), and then quoting *Family Fed'n for World Peace v. Moon*, 129 A.3d 234, 242 (D.C. 2015)). To "fall under" Section (a)(1), "a nonresident defendant need not have been physically present in the District" so long as its business transactions "cause a consequence here." *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981).

Section (a)(4) permits the exercise of personal jurisdiction when an entity "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia" and either "[1] regularly does or solicits business, [2] engages in any other persistent course of conduct, or [3] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]" D.C. Code § 13–423(a)(4). For Section (a)(4) to apply, a defendant need only engage in a "persistent course of conduct" in the District, which is satisfied when "there are minimum contacts with the forum sufficient to satisfy due process concerns." *Akhmetshin v. Browder*, 275 A.3d 290, 295 (D.C. 2022) (quoting *Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 762 (D.C. 2009)); *see also Akhmetshin v. Browder*, 761 F. Supp. 3d 1, 8–9 (D.D.C. 2024).

### 2. Due Process

This Court has sufficient contacts to exercise specific jurisdiction over Good Consulting under *Calder v. Jones*, 465 U.S. 783 (1984). Normally, a "mere injury to a forum resident is not a sufficient connection to the forum" for the minimum contacts inquiry, when it is "random, fortuitous, or attenuated." *Walden v. Fiore*, 571 U.S. 277, 286, 290 (2014) (citation omitted). But, in *Calder*, the Supreme Court held that a California court may exercise jurisdiction over out-of-state, Florida defendants in a libel action "because [ ] their intentional conduct in Florida [was] calculated to cause injury to [the plaintiff] in California." 465 U.S. at 791. *Calder* established the principle that the "effects" of a non-forum actor's "intentional conduct" can, in some instances, "create[] the necessary contacts with the forum" to establish specific jurisdiction. *Walden*, 571 U.S. at 287–88.

To determine whether *Calder* applies, courts usually apply a three-part "effects test" where specific jurisdiction is based on a defendant's: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is

9

likely to be suffered—in the forum state." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 29 (D.D.C. 2017) (quoting *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)), *aff'd*, 2018 WL 4440459 (D.C. Cir. July 17, 2018).[2] Good Consulting's challenged conduct allegedly violating the Federal Defend Trade Secrets Act, the D.C. Uniform Trade Secrets Act, and D.C. tort law clearly satisfies this test.

*First*, Alpine alleges that Mr. Jacokes created Good Consulting to serve as the "landing spot" for his obtained trade secrets and solicited clients. Compl. ¶ 34. And Good Consulting allegedly used these trade secrets to "intentionally interfere" with Alpine's relationships with existing clients. Compl. ¶ 102. Undoubtedly, the complained-of conduct constituted "intentional actions." *Triple Up*, 235 F. Supp. 3d at 29.

*Second*, Good Consulting's "intentional conduct" outside this forum was "calculated to cause injury" to Alpine in the District of Columbia. *Calder*, 465 U.S. at 791. And the fact the misuse of trade secrets was "performed outside the" District does not defeat jurisdiction when Good Consulting has such an intent. *Id.* at 787, 789. For instance, the *Calder* "effects doctrine" extends even to non-forum "cyber-pirate[s]" who intentionally steal intellectual property "in unabashedly malignant actions directed at or felt in this forum." *GTE New Media Servs.*, 199 F.3d at 1349 (citation omitted). Here, the unlawful acquisition of Alpine's proprietary information and interference with its clients thereafter are similarly "expressly aimed at" this forum, which is sufficient to support jurisdiction under *Calder*. *Triple Up*, 235 F. Supp. 3d at 29.

*Third*, the "the brunt" of Alpine's injury "[was] suffered—and which [Good Consulting] kn[ew] [was] likely to be suffered—in the forum." *Triple Up*, 235 F. Supp. 3d at 29. Indeed, Good

---

[2] *See also Akhmetshin v. Browder*, 761 F. Supp. 3d at 11–12 (quoting *Kline v. Williams*, No. 05-cv-1102, 2006 WL 758459, at *5 (D.D.C. Mar. 23, 2006)) (applying same three-part test).

Consulting's misuse of trade secrets and solicitation of Alpine's clients was "felt in this forum" by Alpine—a D.C. Company which suffered the termination and/or non-renewal of its contractual relationships with existing clients. *GTE New Media Servs.*, 199 F.3d at 1349. Accordingly, "[j]urisdiction over the defendant[] [i]s 'therefore proper in [the forum] based on the 'effects' of [this non-forum] conduct.'" *Walden*, 571 U.S. at 287 (quoting *Calder*, 465 U.S. at 789). The District of Columbia is "the focal point both of the story and the harm suffered" in this action. *Id.* (quoting *Calder*, 465 U.S. at 789).

Since all three prongs of the *Calder* "effects" test are satisfied, this Court's exercise of specific jurisdiction over Good Consulting "is therefore proper." 465 U.S. at 789.

### D.  Subject-Matter Jurisdiction

Although the parties raise factual disputes over diversity of citizenship, *compare* Opp'n 15–17, *with* Reply 5–6, it is undisputed that this Court has federal question jurisdiction over the Federal Defend Trade Secrets Act claim (Count IV), 28 U.S.C. § 1331, and can therefore exercise supplemental jurisdiction over the remaining claims (Counts I–III, V–VI), *id.* § 1367(a). *See* Mot. 10–12. This Court sees no reason to decline the exercise of supplemental jurisdiction here. 28 U.S.C. § 1367.[3]

---

[3] Since the Court has both personal and subject-matter jurisdiction, the Court need not entertain Alpine's alternative request for jurisdictional discovery. Opp'n 13–15.

## CONCLUSION

For the foregoing reasons, the Court denies the Defendants' Motion to Dismiss, ECF No. 8.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   October 17, 2025